NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HOFFMAN-LA ROCHE INC.,** : | |
| : | |
| Plaintiff, : | |
| v. : | **CIV. ACTION NOS. 09-5283 (ES)** |
| : | |
| **TEVA PHARMACEUTICAL USA, et al** : | |
| : | |
| Defendant. : | |
| **HOFFMAN-LA ROCHE INC.,** : | |
| : | |
| Plaintiff, : | |
| v. : | **CIV. ACTION NOS. 09-6335 (ES)** |
| : | |
| **ROXANNE LAB, et al** : | |
| **PHARMACEUTICAL INC.** : | |
| Defendant. : | |

**SALAS, District Judge.**

This matter is before the Court by way Defendants' motions to dismiss Plaintiff Hoffman-La Roche Inc.'s ("Plaintiff" or "Roche Nutley") complaints in three related actions pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] Oral argument was held on July 22, 2011. The Court has considered the arguments of counsel and the submissions of the parties in support of

---

[1] Given the similarity of facts and law between the actions, the commonality of arguments in support of and in opposition to the instant motions, the interest of judicial economy, and the lack of objection from counsel, this Court's opinion applies to the following civil actions: Hoffman-LaRoche, Inc. v. Teva Pharmaceutical USA, et al., D.N.J. Civ. Act. No. 09-5283 ("the Teva Action") & Hoffmann-LaRoche Inc. v. Roxanne Lab, et al., D.N.J. Civ. Act. No. 09-6335 ("the Roxanne Action"). For ease of reference, the Court refers to the movants collectively as "Defendants."

1

and in opposition to the instant motion, and for the reasons set forth below, Defendants' motions are granted.

## I. BACKGROUND

The Teva Action was filed on October 16, 2009. *Complaint*, D.E. 1 (D.N.J. 09-5283). The Roxanne Action was filed on December 15, 2009. *Complaint*, D.E. 1 (D.N.J. 09-6335). Both complaints allege infringement of U.S. Patent No. 5,472,949 ("the '949 patent"). E.g., Complaint, at ¶ 1 (D.N.J. 09-5283). In both actions, Plaintiff alleges that it is "the lawful owner by assignment of all rights, title and interest to the '949 patent, including all rights to sue and recover for infringement thereof."

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. A motion under Rule 12(b)(1) "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir.2000). Defendants' style their motion as a factual subject matter jurisdiction challenge. (Defs.' Mv'ing Br. at 1 & 6). In reviewing a factual attack the challenge is to the actual alleged jurisdictional facts. Thus, a court is to consider evidence outside the pleadings. Id. Moreover, "conflicting written and oral evidence may be considered and a court may decide for itself the factual issues which determine jurisdiction." Koronthaly v. L'Oreal USA, Inc., Civil Action No. 07-5588, 2008 WL 2938045, at *2 (D.N.J. July 29, 2008) (citations omitted). Finally, once a 12(b)(1) challenge is raised, the burden shifts and the plaintiff must demonstrate the existence of subject-matter jurisdiction. PBGC v. White, 998 F.2d 1192, 1196 (3d

Cir. 2000).[2]

### III.   LEGAL DISCUSSION

Defendants move to dismiss Plaintiff's complaints for lack of standing pursuant to Rule 12(b)(1) alleging that Plaintiff did not own the patent in suit at the time the complaints were filed. Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit. Keene Corp. v. United States, 508 U.S. 200, 207 (1993).[3] To assert standing "[i]n a patent infringement action, 'the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit.'" Abraxis Biosciences, Inc. v. Navinta LLC, 625 F.3d 1359, 1366 (Fed. Cir. 2010) (quoting Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309-310 (Fed. Cir. 2003)).

"Standing to sue for infringement stems from the Patent Act, which provides: '[a] patentee shall have remedy by civil action for infringement of his patent.' 25 U.S.C. § 281." Israel Bio-Eng'g Project v. Amgen Inc., 475 F.3d 1256, 1264 (Fed. Cir. 2007). The term "patentee" in § 281 of the Patent Act can be the original owner or "successors in title to the patentee." Id. (citing 35 U.S.C. § 100(d)). Thus, in order to survive Defendants' motions, Plaintiff must establish by a preponderance of the evidence that it held title to the patent on the days that it commenced both

---

[2] Much of the confusion and obfuscation in Plaintiff's oral argument is likely attributable to Plaintiff's failure to argue the proper standard. (See Tr. 120:19-25, 121:1-5: Plaintiff's counsel arguing that this Court should deny Defendant's motion because the issues before the Court are "more factual in nature" and, therefore, more properly before the Court at either summary judgment or trial.)

[3] If a plaintiff lacks standing at the time the action is filed, then such a deficiency cannot be cured retroactively. Abraxis Biosciences, Inc. v. Navinta LLC, 625 F.3d 1359, 1366 (Fed. Cir. 2010) (citing Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1203 (Fed. Cir. 2005)).

actions.[4] This, therefore, requires the Court to "trace the chain of title" linking the named inventors to Plaintiff. Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1092 (Fed. Cir. 1998). Section 261 commands that patents "shall be assignable in law by an instrument in writing" which may "take the form of a patent license or any other written instrument that transfers patent rights." Morrow, 499 F.3d at 1337 n.3. Therefore, whether a Plaintiff that is an apparent "successor in title" has standing to sue depends on the substance and scope of any purported assignment or transfer documents that are part of the alleged chain of title.

At oral argument, in an attempt to focus Plaintiff on the proper standard, this Court asked Plaintiff to present its primary chain of title theory linking the named inventors to Plaintiff. In response, Plaintiff proffered two theories and submitted a demonstrative exhibit describing three additional theories. Each theory involves a series of documents[5] controlling the relationships between the following players: (1) the seven named inventors of the patent in suit ("the Inventors"), (2) Nippon Roche K.K. ("Nippon"), (3) F. Hoffman-La Roche & Company AG ("Basel"), and (4) Hoffman-La Roche, Inc. in Nutley, NJ ("Plaintiff" or "Nutley").[6] The Court will now trace each proffered chain of title.

---

[4] The Teva Action was filed on October 16, 2009. *Complaint*, D.E. (D.N.J. 09-5283).The Roxanne Action was filed on December 15, 2009. *Complaint*, D.E. 1 (D.N.J. 09-6335).

[5] Plaintiff relies on the following assignment and transfer documents in support of its various chain of title theories: (1) the January 1963 Research Agreement between Basel and Nutley ("1963 Agreement") , (2) the January 1969 Research Agreement between Nippon and Basel ("1969 Agreement"), (3) the September 1982 Nippon Employee Regulations ("Regulations"), (4) the January 1992 Research Agreement between Basel and Nutley, ("1992 Agreement"), (5) the October 1993 Assignment from the Inventors to Basel ("October Assignment"), (6) the December 1993 Borer Memorandum ("Borer Memo"), and (7) the December 1993 Assignment from Nippon Inventors to Nutley ("December 1993 Assignment").

[6] Defendants raise several arguments questioning whether or not F. Hoffman-La Roche & Company AG is the same entity across each supporting document. The Court need not address this issue because even assuming that each entity is in fact the same Plaintiff fails to meet its burden.

A. <u>**Primary Theory Presented at oral argument (Path 1 in demonstrative)**</u>

Plaintiff argues that title to the patent in suit transferred from the Inventors through Nippon to Basel via the 1982 Regulations,[7] the 1969 Agreement,[8] and the October 1993 Assignment.[9] Title then passed from Basel to Nutley via the 1963 Agreement. Specifically, Plaintiff contends that once Basel acquired legal title to the patent in suit, legal title to these rights automatically and immediately vested in Basel by operation of the 1963 Agreement between Basel and Nutley. (Pl. Opp. Br. 10).

Even assuming *arguendo* that title to the patent passed from the Inventors to Basel, the Court finds that there is a break in Plaintiff's chain of title between Basel and Nutley. Plaintiff's primary theory relies exclusively on the 1963 Agreement to transfer title from Basel to Nutley. At the time the October 1993 Assignment was executed, 1963 Agreement did not control because the 1992 "Agreement supersede[d], replace[d] and revoked[d] all prior Agreements between the Parties, <u>including the Research Agreement entered into on January 25, 1963</u>." (<u>See</u> Exh. D to Bohm Decl. at 12, Section 8.2)(emphasis added). Plaintiff argues, however, that the 1963 Agreement is preserved by the following language: "[t]ermination of [the 1963] Agreement shall not affect any rights or obligations of the parties hereunder with respect to <u>Research Results</u> existing prior to such termination" (1963 Agreement ¶ 5)(emphasis added). However, even assuming that this language survived the 1992 Agreement, the survival clause is cabined to "Research Results" which the 1963 Agreement <u>defines</u> as "information regarding their respective

---

[7] Plaintiff concedes that the Regulations do not serve as a as an automatic transfer of rights. <u>See</u> Tr. 125:8-11. To the extent that Plaintiff has proffered arguments that are inconsistent with those made at oral argument, the Court notes that it takes Plaintiff's arguments and representationa made at oral argument as its final position on the issue.

[8] For the reasons discussed *infra* (<u>see</u> Section III. C.), the 1969 Agreement does not serve as an automatic transfer of rights from <u>Nippon to Basel</u>, but merely as a promise to assign.

[9] For purposes of this motion, the parties do not contest the validity of the October 1993 Assignment.

research activities including full information regarding all inventions, discoveries, formulae processes, manufacturing secrets, technical, pharmacological and clinical data, improvements and development made or acquired in any." Id. This definition neither includes patent rights, nor references any term that could be construed as patent rights. Moreover, another section of the 1963 Agreement deals exclusively with patent rights and does not contain a similar survival clause. It is reasonable to conclude, therefore, that the parties treated Research Results separately and distinctly from patent rights. Therefore, the Court finds that, at a minimum, the 1992 Agreement, effective as of January 1, 1992, controlled the relationship between Basel and Nutley and expressly superseded, revoked and replaced the 1963 agreement. Thus, any transactions, patents, inventions, patent applications, as of January 1, 1992, fall within the purview of the 1992 Agreement.

With this in mind, in order to show that valid title to the patent in suit transferred from Basel to Nutley via the October 1993 Assignment, Plaintiff must show that the 1992 Research Agreement (and not the 1963 Agreement) contains automatic transfer language. Plaintiff, however, concedes that the "1992 Research Agreement did not provide for an *automatic* transfer of rights between Roche Basel and Roche Nutley." (See Opp. Br. 12 n.6). Thus, because the 1992 Agreement does not provide for an automatic transfer and because Plaintiff's theory does not proffer a writing purporting to make such a transfer, the chain of title under this theory ends with Basel and does not link the Inventors to Nutley. Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1092 (Fed. Cir. 1998) (To determine whether Plaintiff held title, this Court must "trace the chain of title" that links the named inventors to Plaintiff).

For the foregoing reasons, Plaintiff's primary theory in support of the existence of subject matter jurisdiction does not demonstrate by a preponderance of the evidence that Roche Nutley

held valid title to the patent in suit on the days that the relevant actions were filed.[10]

### B. Alternate Theory presented at oral argument (Path Four in demonstrative)

At oral argument, Plaintiff presented an alternate chain of title theory based on the presumption that valid title passed from the Inventors to Basel and then passed from Basel *back* to the Inventors via the Borer Memorandum and from the Inventors to Nutley via the December 1993 Assignment.

Under Federal Circuit precedent, once an inventor assigns all rights and title to a claimed invention to an assignee, the inventor has "nothing remaining to assign" and any subsequent purported assignment is a nullity. See, e.g., Filmtec Corp. v. Allied-Signal Inc., 939 F.2d 1568, 1572 (Fed. Cir. 1991). Here, Plaintiff's alternate theory is predicated on valid title passing from the Inventors to Basel as of October 1993 under the 1992 Agreement.[11]  Operating under the presumption that the October 1993 Assignment was valid, then as of the date of execution (Oct. 1993) the Inventors had no remaining rights to the '949 patent and any purported assignment of those rights is a nullity.   Plaintiff, however, argues that the Inventors did in fact regain rights to the '949 patent prior to December 1993. Specifically, Plaintiff argues that the "Borer Memorandum serves as the authorization from Roche Basel [to the Inventors] . . . to transfer legal title of the patent-in-suit to Roche Nutley" (Opp'n Br. at 12 n. 6) and that the Inventors executed such an assignment in December 1993 (i.e., the aforementioned "December 1993 Assignment").

The Borer Memorandum, however, does not contain any language purporting to transfer the rights to the patent in suit from Basel back to the Inventors, but merely requests that the Inventors execute the attached document purporting to assign rights to the '949 patent (which by

---

[10] The Teva Action was filed on October 16, 2009. *Complaint*, D.E. (D.N.J. 09-5283). The Roxanne Action was filed on December 15, 2009. *Complaint*, D.E. 1 (D.N.J. 09-6335).
[11] See Tr. 121:14-21.

Plaintiff's own argument lay with Basel) to Nutley. Plaintiff has failed to provide the Court with any case law standing for the proposition that either (1) the language contained in the Borer Memorandum can affect a transfer or (2) that the title holder to a patent (here, Basel) can authorize a non-title holder (here, the Inventors) to transfer a right that the non-title holder does not possess.

Because the Court finds that the Borer Memorandum did not restore the Inventors' rights to the '949 patent and that, therefore, the December 1993 Assignment is a nullity, Plaintiff's alternate theory fails to show by a preponderance of the evidence that Roche Nutley held valid title to the patent in suit on the days that the relevant actions were filed.

**C. "Path Three" presented in demonstrative exhibit**.

Plaintiff argues that title passed <u>from the Inventors to Nippon Roche</u> via the Regulations and <u>from Nippon to Basel</u> via the 1969 Research Agreement or the October 1993 Assignment of World-Wide Rights. Path Three, however, is silent as to how title ultimately vests in Nutley.

First, as stated above, Plaintiff concedes that the Regulations, without more, do not provide a vehicle automatically transferring title from the Inventors to Nippon. Therefore, under Path Three, Plaintiff has failed to demonstrate a valid link between the Inventors and Nippon. Second, the 1969 Agreement does not provide a vehicle for title to pass from Nippon to Basel as it does not contain automatic transfer language. The 1969 Agreement provides, in relevant part, that

> **Nippon agrees** that all inventions made or conceived by such employees, alone or jointly with others, during the respective periods of their employment (including any periods or authorized leave of absence, belong to ROCHE and NIPPON therefore **agrees to assign such inventions** to ROCHE and to **assist ROCHE in ever proper way to obtain patents** of such inventions in any or all countries."

Ex. B to Bohm Decl. at 2 (emphasis added). This language mirrors the language of <u>Abraxis</u> where the Federal Circuit held that "contract language stating that a party 'agrees to assign' reflects a mere promise to assign in the future." <u>Abraxis</u>, 635 F.3d at 1365. Therefore, the 1969 Agreement

does not create an automatic assignment, but is limited to a promise to assign in the future. Although the October 1993 Assignment purports to transfer rights from the Inventors to Basel, Path Three does not provide a link from Basel to Nutley. Because Path Three does not demonstrate by a preponderance of the evidence that valid title passed from the Inventors to Nippon to Basel to Nutley, Plaintiff has failed to demonstrate that it held valid title to the patent in suit on the days that the relevant actions were filed.

### D. "Path Two" presented in demonstrative exhibit.

Under Path Two ("Path Two"), Plaintiff argues that title passed <u>from the Inventors to Roche Basel</u> via either the Regulations or the October 1993 Assignment. Path Two, however, does not articulate how title ultimately reaches Nutley. First, for the reasons stated above, the Regulations alone do not affect an automatic transfer from the Inventors to Basel. Second, although Path Two demonstrates an apparent legitimate transfer of title from the Inventors to Basel via the October 1993 Assignment, Path Two fails to demonstrate that Basel transferred title to Nutley. For the reasons stated above each of Plaintiff's alternate theories fail to show by a preponderance of the evidence that title passed from Basel to Nutley. As such, Path Two does not show that Nutley held valid title to the patent in suit on the days that the relevant actions were filed.

### E. "Path Five" presented in demonstrative exhibit

Path Five ("Path Five") presumes that valid title has already traveled from the Inventors to Basel. Plaintiff argues that title then passed <u>from Basel to Nutley</u> either via (1) the Borer Letter and the December 1993 Assignment or (2) the 1992 Agreement (<u>See</u> *supra* III. A.)(<u>See</u> <u>also</u> Opp. Br. 12 n.6). For the reasons stated above, even assuming that Basel held valid title, neither of Path Five's routes demonstrate by a preponderance of that Nutley held valid title to the patent in suit on the days that the relevant actions were filed.

**IV.     CONCLUSION**

For the aforementioned reasons, Plaintiff has failed to demonstrate by a preponderance of the evidence that it was the "lawful owner by assignment of all rights, title and interest in and to the '949 patent, including all rights to sue and recover for infringement thereof" on the date these actions were filed: October 16, 2009, and December 15, 2009.[12] As such, Plaintiff's complaint must be dismissed with prejudice. An appropriate Order accompanies this Opinion.[13]

/s/ Esther Salas
United States District Judge

---

[12] The Court makes no determination as to who or what entity holds title to the patent in suit either at the time of filing or at present. To be clear, the Court's holding is limited to the determination that Plaintiff failed to show by a preponderance of the evidence that it held title to the patent in suit on the date the relevant actions were filed.

[13] Defendants make several well-formed arguments concerning the authenticity and admissibility of many of the documents that Plaintiff relies on to establish a chain of title. The Court need not address said arguments because even assuming *arguendo* that each document is admissible, Plaintiff has failed to demonstrate a valid chain of title.